## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **SIMON ZHORNITSKY** | : | **Civil Action No.:    24-18** |
| **Plaintiff,** | : | |
| **v.** | : | |
| | : | **Jury Trial Demanded** |
| **YALE SCHOOL OF MEDICINE AND** | : | |
| **CONNECTICUT MENTAL HEALTH CENTER** | : | |
| **Defendants** | : | **January 4, 2024** |

### COMPLAINT

Yale School of Medicine and Connecticut Mental Health Center violated Simon Zhornitsky, Ph.D's due process rights, and discriminated against him, after he was falsely accused of sexual misconduct. Because these violations of his civil rights have destroyed his career, ruined his reputation, and caused him ruinous harm, Dr. Zhornitsky brings this case to recover damages.

### THE PARTIES

1.      Simon Zhornitsky (hereinafter "Plaintiff"), is an individual of the full age of majority and a citizen of the State of Connecticut, who resides in New Haven, CT.

2.      Yale School of Medicine ("Yale" and/or "Defendant"), is located at 333 Cedar Street, New Haven, CT  06510.  Defendant Yale was the Plaintiff's principal employer and is an employer as defined under Title VII and C.G.S. §46a-60 *et seq*.

3.      Connecticut Mental Health Department ("CMHC" and/or "Defendant"), is located at 34 Park Street, New Haven, CT  06519.  Defendant CMHC has been held out by Yale to be an Affiliate and/or Agent of Yale, and therefore also qualifies as Plaintiff's principal employer and is an employer as defined under Title VII and C.G.S. §46a-60 *et seq*.

1

## ADMINISTRATIVE HISTORY AND
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.        Plaintiff has exhausted administrative remedies.  Plaintiff filed timely claims of

discrimination with the Equal Employment Opportunity Commission ("EEOC"), against Yale

and CMHC, claim numbers 16A-2023-00359, 16A-2023-00360 which were duly filed with the

Connecticut Commission on Human Rights and Opportunities ("CHRO"), Claim numbers

2330246  and 2330247.  Plaintiff was granted a release of jurisdiction to pursue his claim in

court from the CHRO on September 27, 2023, and from the EEOC on October 19, 2023.

## FACTUAL BACKGROUND
## (Relevant to all Counts)

5.        Plaintiff was hired by Defendant Yale on or about November 2016 working for

Dr. Chiang-Shan Ray Li as an Associate Research Scientist.  Dr. Ray Li's work location, where

Plaintiff was also assigned, was located within the Connecticut Mental Health Center at 34 Park

Street, First Floor, New Haven, Connecticut  06519.

6.        Plaintiff, as a Yale employee, always maintained a high level of job performance

with no history of any disciplinary action.

7.        On or about February 2017 Plaintiff met a woman named Joanna Perez ("Perez")

on Match.com.  Perez and the Plaintiff communicated a few times through that platform, but they

never actually went out on a date and soon after stopped communicating.

8.        Perez was employed by CMHC and was not a Yale employee.  She worked on the

second floor at CMHC as an Occupational Therapist.

9.        Beginning on or about February 2022, Plaintiff became aware that Perez owned

an LLC called Shift-Wellness Coaching that focused on mind, body and helping people move on

from troubled relationships.  At that time, Plaintiff inquired with Perez about possibly

2

collaborating on some research projects and inquiring about attending some of her therapy based training sessions.

10.     For several weeks, Plaintiff sent messages to Perez's business Instagram account, expressing his continued interest in her, discussing his hardship in his own personal relationship and other everyday communications.  None of those direct messages were of a sexual or sexually harassing nature.

11.     Perez never directly responded to the Plaintiff's private messages, but Plaintiff believed that it was intentional, because Perez knew that Plaintiff was married.

12.     Perez did however, routinely post new information on her business Instagram page that Plaintiff believed were posts that were responsive to his messages, so he continued to message Perez for several weeks.

13.      On or about early March 2022, Plaintiff was notified by CMHC police and Yale's Title IX Coordinator Jason Killheffer that Perez had contacted them requesting that Plaintiff be notified that she no longer wanted the Plaintiff to send her messages or to have any further contact with her.

14.     Plaintiff immediately complied and Plaintiff had no further contact with Perez.

15.     Although Plaintiff never made any direct or indirect contacted with Perez after March 2022, two months later, Plaintiff was notified by Yale that Perez had filed another complaint against him.

16.     Yale's Title IX Coordinator and its Director of Psychiatry, John Krystal began an investigation.  As part of that investigation, Perez supplied Killheffer with copies of Plaintiff's Instagram messages.

17.     Yale's investigation did not substantiate any violations by the Plaintiff and no discipline was issued, but Plaintiff was directed going forward that he was to continue to have no further contact with Perez.

18.     Months later, in June 2022, Plaintiff took on the role of Associate Research Scientist with Dr. Gustavo Angarita, head of the Yale Cocaine Clinic, whose office location was located at the Clinical Neuroscience Research Unit on the 3rd floor of CMHC.

19.     Plaintiff's job duties included performing bloodwork for Dr. Gustavo Angarita's participants and he was trained to perform those duties at the blood draw station on the 2nd floor of CMHC because it was staffed by a certified phlebotomist and was more automated.

20.     Plaintiff performed those duties without incident until the week of September 12, 2022, wherein he was attending to a subject who was required to undergo a urine test, as well as a blood draw.  On that day, while waiting for the subject to come out of the bathroom, Perez walked by the Plaintiff on her way into the Outpatient Office.  A few seconds later, Perez came back out into the hallway with another co-worker, looked at the Plaintiff and went back into her office.  Plaintiff did not acknowledge Perez in any manner.

21.     On Monday morning, September 19, 2022, Plaintiff received an email from Yale's Title IX Coordinator, Jason Killhoffer to attend a Zoom meeting with him that day.  Upon attending that meeting, Plaintiff was notified that Perez had filed another complaint now accusing Plaintiff of "hanging around the outpatient office."  Plaintiff was notified that CMHC was banning the Plaintiff from the CMHC building pending another investigation.

22.     Plaintiff explained to Killhoffer that he was in that location strictly to perform tasks related to his job duties.  Upon Yale confirming Plaintiff's statement with Dr. Angarita,

Plaintiff's supervisor, Plaintiff was once again cleared of any wrongdoing.  However, Plaintiff was advised that Yale could not force CMHC to let him back into the building.

23.     Following that meeting, Plaintiff sent an email to CMHC Director, Michael Sernyak asking for him to look into this matter, as he had done nothing wrong and a ban from CMHC would devastate his career.  Mr. Sernyak did not respond to Plaintiff's email.

24.     CMHC notified Plaintiff that Perez's complaint against him was being classified as a Strike II and he was advised that while he could return to the CMHC building, he was being banned from the Air Rights Garage, as well as from the 2nd floor of CMHC, but that remedy was only available if Perez agreed to those terms.

25.     On or about November 22, 2023, Perez emailed Yale's Title IX Coordinator Jason Killheffer regarding Plaintiff's return to CMHC.  She indicated her intent in filing that complaint was not on the basis of any of the past incidents, but to "prevent future incidences" so that she would "ensure that there is documentation to prevent future incidences."  She concluded that email stating "My understanding is that there is not yet a date for his return to CMHC and I would like to have this process completed ASAP."

26.     Killheffer documented that communication and took no further action.

27.     Two months later, on or about January 9, 2023, upon Yale being notified by the Commission on Human Rights & Opportunities ("CHRO") that Plaintiff had filed a charge of discrimination, Yale retaliated against the Plaintiff wherein Diane Cornelius Charles, Yale Deputy Title IX Coordinator, notified the Yale University-Wide Committee on Sexual Misconduct that she was initiating a Title IX Sexual Misconduct complaint against the Plaintiff on behalf of Perez.

28.     Yale's Title IX Committee was established to address formal complaints of sex or gender-based discrimination fairly and expeditiously.

29.     Yale initiated Perez's Title IX complaint against the Plaintiff despite all of her prior complaints being determined not to rise to the level of sexual harassment and/or stalking and/or were found to be unsubstantiated by Title IX Coordinator Jason Killheffer.

30.     If Perez's prior complaints had risen to the level of sexual harassment and/or stalking, Killheffer at that time, was mandated under those Federal Title IX regulations, to bring forth such charges.

31.     Title IX regulations also mandate that specific conditions are a prerequisite for bringing a Title IX claim, including that at the time the complaint is filed, the person bringing the complaint is participating in or seeking to participate in a Yale program or activity and that the misconduct must occur at a Yale campus, a Yale sponsored event, or within a building owned or controlled by a student organization officially recognized by Yale.

32.     At no time was Perez participating in any Yale program or activity and none of the alleged misconduct occurred within a Yale program or activity or on any Yale premises that Yale owned or substantially controlled.

33.     Yale engaged not only in retaliation, but also selective enforcement and gender bias when it brought forth that Title IX charge, knowing full well that Plaintiff has been previously subjected to adverse employment actions and ultimately cleared of any wrongdoing by both Yale and CMHC.

34.     Yale engaged in further selective enforcement on the basis of gender bias when Plaintiff made a formal request to also file a Title IX complaint against Perez and his request was

denied, being advised that he could not do so because Perez was not a student, employee or a member of any Yale University program.

35.     Yale implemented a sex-based disparate, discriminatory and differential standard on behalf of a non-Yale-affiliated female individual subjecting the Plaintiff to sex/gender discrimination, harassment and retaliation.

36.     In the face of Plaintiff's objections and in an abuse of authority, Yale dismissed Plaintiff's complaints and proceeded forward with Perez's Title IX complaint.

37.     During that investigation, Yale did not investigate Perez's request for documentation in case of "future" events, instead it tore through each and every pre-March, 2022, Instagram message that Plaintiff had sent to Perez on her non-affiliated personal business Instagram account and classified those private messages as substantiating a charge of sexual harassment.

38.     During that investigation, Yale disregarded the fact that not only had Plaintiff been previously cleared of any wrong doing in relations to those Instagram messages, but it further disregarded the fact upon Plaintiff being notified to have no further contact with Perez, he never violated that directive.

39.     Yale's Title IX committee utilized pre-March 2022, contact by the Plaintiff as justification to charge him with stalking.

40.     Yale's Title IX Committee, although verifying that Plaintiff had been on the 2nd floor of CMHC for legitimate business reasons, disregarded that evidence, giving Perez more weight than the Plaintiff's version of events despite the availability of evidence refuting her claims.

41.     Yale issued findings against the Plaintiff that were incorrect and contrary to the weight of the evidence subjecting Plaintiff to adverse employment actions including being suspended, banned from his work location and forced out of his employment with Yale.

42.     Although Plaintiff had already been disciplined with a no-contact order that he never violated, was previously banned from the CMHC building for over three (3) months, and banned from the parking garage, Yale subjected Plaintiff to double jeopardy when it again disciplined the Plaintiff a second time, for those same alleged acts.

## COUNT ONE – TITLE IX VIOLATION FOR GENDER DISCRIMINATION AGAINST DEFENDANT YALE

43.     1-42.   Plaintiff repeats and realleges each and every allegation set forth above in paragraphs 1 through 42 with the same force and effect as if more fully set forth herein.

44.     Title IX of the Education Amendments of 1972 protects people from sex discrimination in educational programs and activities at institutions, like Yale, that receive federal financial assistance and any such proceedings must be conducted impartially and without conflict of interest or bias.

45.     Yale is mandated to follow the Rules of the Title IX of the Education Amendments of 1972 Act.

46.     The Rules of the Title IX of the Education Amendments Act sets forth that as a prerequisite to bringing forth a Title IX complaint, the complaining party must be engaged in a Yale educational program or activity and the misconduct must take place at a Yale campus, sponsored event or in another place that Yale exercised substantial control.

47.     The Rules of the Title IX of the Education Amendments Act sets forth the person making the formal complaint must submit to a Title IX Coordinator and the Secretary a written complaint that is signed by the individual bringing forth the complaint.

48.     Perez is an Occupational Therapist for the State of Connecticut Department of Mental Health and Addiction Services ("DMHAS").

49.     Perez works with adults with mental health and addiction disorders at the Community Mental Health Center located at 34 Park Street in New Haven in the Outpatient Rehabilitation Services Department.

50.     Perez does not work closely with Yale despite the fact that Yale faculty and state employees may at times work within the DMHAS building.

51.     Perez did not work within any Yale building or attend any Yale educational programs or activities and at no time was she hindered in her ability to access buildings and facilities that were operated by Yale.

52.     Perez did not submit a signed written complaint of sexual harassment and/or stalking to any Title IX Coordinator and/or the Secretary and no signed complaint was evidenced during Yale's Title IX grievance proceedings.

53.     The alleged misconduct did not occur on any Yale campus, at a Yale sponsored event, in another place, event or circumstances over with Yale exercised substantial control, or in a building owned or controlled by a student organization officially recognized by Yale.

54.     The Rules of the Title IX of the Education Amendments Act sets forth that if the allegations did not occur in the school's education program or activity against a person in the United States, the school must dismiss such allegations for purposes of Title IX, but still may address the allegations under the school's own code of conduct.

55.     All social media posts sent by the Plaintiff, to Perez were direct messages to her own private business Instagram account that were in no manner affiliated with Yale.  Plaintiff did not utilize any Yale computers or cell phones in those communications.

56.     Pursuant to the Rules of the Title IX of the Education Amendments Act, as well as the State of Connecticut Department of Education Title IX guidelines, given that Perez was not affiliated with the university, Yale was required to dismiss the Perez Title IX complaint – but it outright refused to do so.

57.     The Rules of the Title IX of the Education Amendments Act also sets forth that any provisions, rules, or practices other than those required by the Final Rules that a school adopts as part of its grievance process for handling formal complaints of sexual harassment, must apply equally to both parties.

58.     Yale subjected Plaintiff to gender bias and discrimination when it refused to dismiss the Perez complaint and failed to act fairly in an unbiased manner when it denied the Plaintiff's request to file a Title IX sexual harassment Complaint against Perez.

59.     In prior Title IX claims, Yale acted impartial and with due diligence wherein it hired third party investigators prior to initiating any such Title IX proceeding, but it did not do so in the instant matter.

60.     Yale erred in its conclusion that Plaintiff's conduct was severe, pervasive, and objectively offensive under the Universities Title IX policy and that Plaintiff's unwelcome conduct impaired Perez's ability to access buildings and facilities *operated by the University* when Perez was not affiliated with Yale in any manner.

61.     Yale subjected the Plaintiff to gender bias when it also subjected the Plaintiff to double jeopardy in violation of his constitutional rights not to be charged more than once for the same alleged crime.

62.     Upon the initial complaint filed by Perez, Yale and CMHC investigated that complaint.  CMHC disciplined the Plaintiff with banning him from his work location while they

investigated.  Neither Yale nor CMHC concluded any finding of sexual harassment, although Plaintiff was advised by both Yale and CMHC that he was not to have any further contact with Perez.

63.     Approximately one year later, Yale subjected Plaintiff to double jeopardy when despite Plaintiff never violating that no contact order, Yale disciplined Plaintiff a second time for the same alleged violation, yet again suspending the Plaintiff, banning him from non-affiliated Yale locations and ultimately effectuating Plaintiff's termination of employment.

64.     As a result of Yale's actions, Plaintiff is unable to apply for career development awards.  His employment contract was only renewed for a six (6) month term instead of the customary one (1) year term.  When applying for any position within the psychiatry department, Plaintiff was told that he was no longer up for consideration and denied interviews.  Plaintiff can no longer apply for an Assistant Professor position as many of those positions require that he work within the CMHC building and as a result of the aforementioned actions, Plaintiff's employment concluded when his contract of employment was not renewed.

65.     Yale's egregious conduct and violations of Title IX's regulations subjected Plaintiff to damages that may rise to a level of damages beyond those allowable under Title VII's statutory cap.

66.     Plaintiff has suffered and will continue to suffer injuries and losses as a result of Defendant's wrongful and discriminatory acts.

67.     As a result of said actions, Plaintiff has suffered damages and is entitled to recover all relief available under the federal statute, including punitive damages and attorney fees.

## <u>COUNT TWO – TITLE VII GENDER DISCRIMINATION AGAINST<br>DEFENDANT YALE</u>

68.     1-67.   Plaintiff repeats and realleges each and every allegation set forth above in paragraphs 1 through 42 and paragraphs 43-67 of COUNT ONE, with the same force and effect as if more fully set forth herein.

69.     Plaintiff is a member of a protected class on the basis of his male gender.

70.     Plaintiff was qualified in his position with Yale, always maintaining acceptable performance evaluations.

71.     Plaintiff at no time violated any Yale policies or procedures.

72.     A non-Yale affiliated individual requested that Yale notify the Plaintiff that she no longer wanted the Plaintiff to send her messages to her private business Instagram account.

73.     Upon Plaintiff being notified of that information, he never made contact with Plaintiff again.

74.     On one occasion, many months later, Perez was walking into her work location and saw the Plaintiff in the hallway on the 2nd floor of the DMHAS building.  Plaintiff filed a complaint for investigation on the basis of possible stalking.

75.     Plaintiff was able to establish that he was at that location for work related reasons that had nothing whatsoever to do with Perez.

76.     Upon Perez being notified that her allegations were unsubstantiated and that Plaintiff would be returning back to his position with Yale, Perez was unhappy with that decision.

77.   Perez initiated an email to Yale's Title IX Coordinator, Jason Killhoffer wherein she did not allege sexual harassment and/or stalking, nor did she request a Title IX investigation, she only requested documentation in case of "future" altercations.

78.   Although Yale, and DMHAS, both independently investigated Perez's prior complaints, neither concluded any wrongdoing by the Plaintiff that rose to the level of sexual harassment and/or stalking.

79.   On or around January 9, 2023, Yale learned that Plaintiff filed a Title VII discrimination complaint and named Yale as a Respondent, with the Commission on Human Rights & Opportunities.

80.   Although there was no evidence presented demonstrating that Perez herself wrote and/or signed any formal complaint on the basis of sexual harassment and/or stalking, in retaliation for Plaintiff's CHRO filing, Yale itself initiated a biased and invalid Title IX investigation and proceeding against the Plaintiff.

81.   Yale's actions were not only retaliatory in nature, but were also gender bias in that while Yale initiated a Title IX investigation and proceeding on behalf of a non-affiliated female individual, upon the Plaintiff requested to bring forth a Title IX complaint against Perez, he was outright denied the ability to do so.

82.   Plaintiff has suffered and will continue to suffer injuries and losses as a result of Defendant's wrongful and discriminatory acts.

83.   As a result of said actions, Plaintiff has suffered damages and is entitled to recover all relief available under the federal statute, including punitive damages and attorney fees.

## COUNT THREE – TITLE VII GENDER BIAS/DISCRIMINATION
## AGAINST DEFENDANT CMHC

84.     1-83.   Plaintiff repeats and realleges each and every allegation set forth above in paragraphs 1 through 42, paragraphs 43-67 of COUNT ONE and paragraphs 68-83 of COUNT TWO, with the same force and effect as if more fully set forth herein.

85.     Yale proceeded with the Perez Title IX complaint and Title IX proceeding suggesting that it could do so, because CMHC was an Affiliate and/or Agent of Yale.

86.     CMHC, as an affiliate and/or agent of Yale, participated in the gender bias and discrimination that Plaintiff was subjected to by subjecting the Plaintiff to multiple investigations, banning him from his work location within CMHC and by allowing Yale to permanently ban Plaintiff from the CMHC building, which effectuated Plaintiff's termination of employment.

87.      As a direct and proximate cause of Defendant DMHC's actions and participation in the acts of Yale, Plaintiff has suffered and will continue to suffer injuries and losses as a result of Defendant's wrongful and discriminatory acts.

88.     As a result of said actions, Plaintiff has suffered damages and is entitled to recover all relief available under the federal statute, including punitive damages and attorney fees.

## COUNT FOUR – TITLE VII RETALIATION AGAINST
## BOTH DEFENDANTS

89.     Plaintiff repeats and realleges each and every allegation set forth above in paragraphs 1 through 42, paragraphs 43-67 of COUNT ONE and paragraphs 68-83 of COUNT TWO, with the same force and effect as if more fully set forth herein.

90.     On or around January 9, 2023, Yale learned that Plaintiff filed a Title VII discrimination complaint and named Yale as a Respondent, with the Commission on Human Rights & Opportunities.

91.     Although there was no evidence presented demonstrating that Perez herself wrote and/or signed any formal complaint on the basis of sexual harassment and/or stalking, in retaliation for Plaintiff's CHRO filing, Yale itself on January 9, 2023, initiated a biased and invalid Title IX investigation and proceeding against the Plaintiff.

92.     The substance of that complaint, as well as the majority of that Title IX proceeding was regarding Perez's initial complaint nine (9) months earlier in March of 2022.

93.     In March, 2022, the Perez complaint was not deemed a violation of Title IX by Title IX Coordinator, Jason Killheffer.

94.     In March, 2022, both Yale and CMHC investigated the Perez complaint and Plaintiff was not charged with any wrongdoing.

95.     Killheffer with assistance from CMHC, addressed and remedied the Perez, March 2022, complaint by implementing supportive measures and issuing Plaintiff a no-contact order, which Perez agreed to as a remedy to that complaint and to which Plaintiff never violated.

96.     Yale actions of subjecting Plaintiff to a Title IX proceeding a year later on those very same allegations, was not only retaliatory in nature, but was also gender bias in that while Yale initiated a Title IX investigation and proceeding on behalf of a non-Yale affiliated female individual, upon the Plaintiff requesting to bring forth a Title IX complaint against Perez, he was subjected to further retaliation when he was outright denied the ability to do so.

97.     Plaintiff has suffered and will continue to suffer injuries and losses as a result of Defendant's wrongful and discriminatory acts.

98.     As a result of said actions, Plaintiff has suffered damages and is entitled to recover all relief available under the federal statute, including punitive damages and attorney fees.

### COUNT FIVE – BREACH OF CONTRACT AGAINST BOTH DEFENDANTS

99.     1-42.   Plaintiff repeats and realleges each and every allegation set forth above in paragraphs 1 through 42, paragraphs 43-67 of COUNT ONE and paragraphs 68-83 of COUNT TWO, with the same force and effect as if more fully set forth herein.

100.    Yale has employee policies and procedures that are set forth in both an employee manual, as well as various postings throughout its University website.

101.    CMHC as an affiliate and/or agent of Yale, are party to Yale's contractual obligations.

102.    Yale Universities online policy sets forth that Yale prohibits discrimination, harassment, and retaliation consistent with CT and federal law, and its policy applies to students, faculty, and staff.

103.    Yale's online policy sets forth that Yale University strictly forbids retaliation against individual's who report sexual harassment misconduct…cooperate in the investigation of sexual harassment misconduct and that its prohibition against retaliation protects complainants, respondents, witnesses, or other persons who have provided or may provide information to a Title IX coordinator.

104.    Pursuant to state and Federal law, Yale's Title IX policies must apply equally to both a complainant and a respondent and those policies only apply to conduct that is directed towards University students, faculty or staff members.

105.    Yale breached its own policies and procedures wherein it implemented a Title IX proceeding on behalf of Perez, who was not a student, faculty or staff member of the University, against the Plaintiff.

106.    Yale breached its own non-discrimination policies and procedures, as well as Title IX regulations, when it refused to apply its rules equally to both the Plaintiff and Perez wherein Yale refused to allow the Plaintiff, a member of the Yale University staff, the right to initiate his own Title IX complaint against Perez, being advised he could not do so because she was not a student, faculty or staff member of the University.

107.    Yale breached its own non-discrimination policies and procedures wherein Yale's Title IX Coordinator did not find the Plaintiff guilty of having committed any act that constituted sexual misconduct, but a year later, subjected the Plaintiff to a biased and discriminatory Title IX proceeding, on those very same allegations.

108.    Yale breached its own no-retaliation policies and procedures wherein in retaliation for the Plaintiff's filing of a charge of discrimination with the Commission on Human Rights and Opportunities, Yale initiated a retaliatory Title IX proceeding against the Plaintiff.

109.    As a direct result of the Defendants' breach of the implied contract, Plaintiff has suffered and will continue to suffer economic losses, loss of other compensation and fringe benefits, damage to his personal and professional reputation and stress and psychological distress.

110.    As a direct result of the Defendants' breach of the implied contract, the Plaintiff is entitled to compensatory damages.

111.    Plaintiff has suffered and will continue to suffer injuries and losses as a result of Defendant's wrongful and discriminatory acts.

112.    As a result of said actions, Plaintiff has suffered damages and is entitled to recover all relief available under the federal statute, including punitive damages and attorney fees.

## COUNT SIX– TITLE IX DUE PROCESS VIOLATION
## AGAINST BOTH DEFENDANTS

113.    1-42.    Plaintiff repeats and realleges each and every allegation set forth above in paragraphs 1 through 42, paragraphs 43-67 of COUNT ONE, paragraphs 68-83 of COUNT TWO, and 84 through 96 of COUNT THREE, with the same force and effect as if more fully set forth herein.

114.    Title IX Federal Regulations specifically set forth that schools must not restrict rights protected under the Constitution including the First Amendment, Fifth Amendment, and the Fourteenth Amendment when complying with Title IX.

115.    The Fifth Amendment to the U.S. Constitution sets forth that an individual cannot be prosecuted more than once for the same alleged crime.

116.    In the present matter, Perez reached out to Yale's Title IX Coordinator Killheffer, requesting that Plaintiff be notified to have no further contact with her.

117.    Plaintiff was banned from his work location at CMHC, while Yale and CMHC investigated Perez's complaint.

118.    That investigation did not conclude any act of sexual harassment by the Plaintiff, but Yale and CMHC did direct Plaintiff to have no further contact with Perez.

119.    While in the performance of Plaintiff's job, Perez saw the Plaintiff near her work location.  Plaintiff did not acknowledge Perez.

120.    Perez filed a complaint, suggesting Plaintiff was hanging out near her work location resulting in Plaintiff again being penalized again with a ban from CMHC pending an

investigation.  Plaintiff was able to substantiate he was at that location with a client, performing his job duties and cleared of any wrongdoing.

121.    Although Plaintiff had been investigated and previously subjected to adverse employment actions, including being disciplined with a no-contact order, banned from the CMHC building and from his work location, Plaintiff was subjected to double jeopardy wherein at the conclusion of Yale's Title IX proceedings, it once again issued discipline against the Plaintiff, for the very same alleged acts, that ultimately resulted in the loss of Plaintiff's employment.

122.    As a direct result of the Defendants' violation of Plaintiff's rights under Title IX, Plaintiff is entitled to compensatory damages.

123.    Plaintiff has suffered and will continue to suffer injuries and losses as a result of Defendant's wrongful and discriminatory acts.

124.    As a result of said actions, Plaintiff has suffered damages and is entitled to recover all relief available under the federal statute, including punitive damages and attorney fees.

## COUNT SEVEN - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST BOTH DEFENDANTS

125.    1-96.    Plaintiff repeats and realleges each and every allegation set forth above in paragraphs 1 through 42, paragraphs 43-67 of COUNT ONE, paragraphs 68-83 of COUNT TWO, and 84 through 96 of COUNT THREE, with the same force and effect as if more fully set forth herein.

126.    Defendants' knew or should have known that its prior investigations into Perez's allegations, did not conclude any act of sexual harassment and/or stalking.

127.    Defendants' knew or should have known that Plaintiff had already received counseling and disciplinary measures relating to Perez's complaints and subjecting him to discipline a second time, would cause Plaintiff to suffer emotional distress.

128.    Defendants' knew or should have known that by ignoring the rules of Title IX and failing to dismiss the Perez Title IX complaint, it would cause Plaintiff to undergo significant emotional distress throughout that Title IX proceeding.

129.    Defendants' knew or should have known that by ignoring the rules of Title IX and failing to dismiss the Perez Title IX complaint, it would result in adverse employment actions, reputational damages, loss of future employment, including effectuating the loss of his job with Yale, which would cause, and did cause the Plaintiff, significant distress.

130.    Defendants' knew or should have known that by issuing a negative Title IX finding against the Plaintiff without just cause, would cause, and did cause, the Plaintiff to suffer severe emotional distress.

131.    Defendants' knew or should have known, that by banning the Plaintiff from accessing a third-party building locations that was not owned or operated by Yale, would effectuate Plaintiff's termination of employment and would cause, and did cause, Plaintiff to suffer severe emotional distress.

132.    As a result of said actions, Plaintiff has suffered damages and is entitled to recover all relief available under the federal statute, including punitive damages and attorney fees.

# **PRAYER FOR RELIEF**

Wherefore Plaintiffs claim the following:

1. Compensatory damages;

2. Costs incurred herein, including reasonable attorney's fees to the extent allowable by law;

3. Punitive damages and expert witness fees;

4. Prejudgment interest;

5. That this Court retain jurisdiction over this matter;

6. Trial by jury;

7. Such other relief as the Court deems just, fair and equitable.

The Plaintiff,
**SIMON ZHORNITSKY**

By: _____/S/_____
Alexander T. Taubes
470 James Street
Suite 007
New Haven, CT 06513
(203) 909-0048
alextt@gmail.com
Juris No.: 437388