UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SIMON ZHORNITSKY | : | |
| | : | DOCKET NO. 3:24-CV-00018-KAD |
| PLAINTIFF | : | |
| | : | |
| v. | : | |
| | : | |
| YALE SCHOOL OF MEDICINE AND | : | |
| CONNECTICUT MENTAL HEALTH CENTER | : | MARCH 21, 2024 |
| | : | |
| DEFENDANTS | : | |
| | : | |

## YALE SCHOOL OF MEDICINE'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7(a) of the Local Rules of this Court, the defendant, Yale School of Medicine ("Yale"), hereby respectfully submits this Memorandum of Law in support of its Motion to Dismiss.

In his Complaint, Plaintiff alleges that Yale discriminated against him on the basis of gender in violation of Title IX of the Education Amendments Act of 1972 ("Title IX") and Title VII of the Civil Rights Act of 1964 ("Title VII") (Counts One and Two), retaliated against him in violation of Title VII (Count Four), and violated his constitutional due process rights in violation of Title IX (Count Six). Plaintiff further alleges state law claims, including breach of an implied contract (Count Five) and intentional infliction of emotional distress (Count Seven). All of these counts should be dismissed with prejudice.

With respect to Plaintiff's Title IX claims:

1. Both Title IX claims fail to state a claim because Plaintiff has not asserted any specific factual allegation to suggest Yale's conduct was tainted by gender bias;

2. Both Title IX claims also fail to state a claim because Plaintiff has not alleged that any similarly situated comparators were treated differently; and

    3.   Plaintiff's Title IX constitutional due process claim fails because Yale is not a state actor.

With respect to Plaintiff's Title VII claims:

    1.   Plaintiff's Title VII gender discrimination claim fails because Plaintiff has not alleged that an adverse action occurred under circumstances giving rise to an inference of discrimination, since he has not offered any factual allegation to support a conclusion that another similarly situated employee was treated differently.

    2.   Plaintiff's Title VII retaliation claim fails because Plaintiff has not alleged that his filing of a complaint with the Connecticut Commission on Human Rights and Opportunities was followed closely by any discriminatory treatment by Yale.

With respect to Plaintiff's state law claims:

    1.   Plaintiff's claim for breach of an implied contract fails to state a claim as a matter of law because Yale's anti-discrimination policies, which are posted online, do not represent a binding agreement between Yale and Plaintiff.

    2.   Plaintiff's claim for intentional infliction of emotional distress fails to state a claim because it does not allege conduct rising to the level of extreme and outrageous conduct that is required to state a claim for that cause of action under Connecticut law.

Accordingly, Plaintiff's claims against Yale should be dismissed in their entirety.

## I.    FACTUAL BACKGROUND

Plaintiff initiated the present action against Yale School of Medicine and Connecticut Mental Health Center ("CMHC") by way of a Complaint dated January 4, 2024. It is alleged that Plaintiff, a former Associate Research Scientist at Yale, was assigned to work at CMHC's offices at all relevant times hereto. Compl. ¶¶ 5, 18. In early 2017, Plaintiff began interacting with a woman named Joanna Perez on Match.com. *Id.*, ¶ 7. Ms. Perez is an Occupational Therapist employed by the State of Connecticut Department of Mental Health and Addiction Services, at CMHC in the Outpatient Rehabilitation Services Department. *Id.*, ¶¶ 48–49. Ms. Perez is not a Yale employee nor is she a party to this action. *Id.*, ¶ 8.

Plaintiff claims that his online connection with Ms. Perez was brief, and they never went out on a date. *Id.*, ¶ 7. Despite their sparse interactions on a dating platform in 2017, Plaintiff

continued to seek out Ms. Perez years later; he tracked down her professional Instagram account and began sending her private messages through the app whereby he expressed his continued interest in a relationship with Ms. Perez. *Id.*, ¶¶ 7, 9, 10. Not once did Ms. Perez respond to any of Plaintiff's messages.[1] *Id.*, ¶ 11. Plaintiff claims he believed that Ms. Perez's silence and non-responsiveness was a sign that she was respecting his marriage, and believed that Ms. Perez was somehow secretly communicating directly with him by posting professional and business-related content on her Instagram page.[2] *Id.*, ¶ 12. Plaintiff's unrequited messages to Ms. Perez persisted despite the fact that she did not respond to his direct messages to her through Instagram. *Id.*

In the Spring of 2022, Ms. Perez complained to CMHC staff about Plaintiff's continuing messages and harassing conduct.[3] *Id.*, ¶ 13. Ms. Perez's concerns were eventually reported to the CMHC police, who directed Plaintiff not to have further contact with Ms. Perez. *Id.* Ms. Perez's concerns were also shared with Yale's Title IX Coordinator, Jason Killheffer, since Plaintiff was a Yale employee who worked in the same space as Ms. Perez. *Id.*, ¶¶ 5, 8, 13, 18. Plaintiff thereafter was also directed by Yale's Title IX Coordinator to have no interaction with Ms. Perez. *Id.*, ¶ 13.

In September 2022, despite the previous instructions from both the CMHC police and Yale University's Title IX Coordinator to avoid interaction with Ms. Perez, Plaintiff began lingering outside of Ms. Perez's office and in the wing of the CMHC building where she

---

[1] During Yale's UWC fact finding, Ms. Perez reported that 38 messages were sent to her business Instagram account in April of 2021.  She explained that she had not actively used the business Instagram account since late 2021 and was unaware of Plaintiff's direct messages until she discovered them in March, 2022.

[2] During Yale's UWC fact finding, Plaintiff admitted that Ms. Perez's posts were public and not directed to him specifically.

[3] In addition to the messages to Ms. Perez's business Instagram account, this conduct included e-mails regarding a mindfulness class taught by Ms. Perez, messages on her personal Instagram account asking her to lunch, and approaching her in the parking garage at CMHC to ask her to lunch.

worked.[4]  At that point, Ms. Perez notified Mr. Killheffer of her concerns regarding Plaintiff's close proximity to her.[5] *Id.*, ¶¶ 20–21. As a result, CMHC then temporarily restricted Plaintiff's access to the building while it investigated Ms. Perez's concerns. *Id.*, ¶ 21.

In November of 2022, after learning that Plaintiff's temporary ban from the CMHC building was coming to an end, Ms. Perez contacted Mr. Killheffer to request that Yale conduct a formal investigation into Plaintiff's conduct. *Id.*, ¶ 25. In January of 2023, Mr. Killheffer filed a complaint under the University-Wide Committee on Sexual Misconduct ("UWC") procedures against Plaintiff on behalf of Ms. Perez.[6] *Id.*, ¶ 27. Plaintiff alleges that he was denied the ability to file a similar complaint against Ms. Perez, *id.*, ¶ 8, 34, but Ms. Perez is not a Yale employee and thus not subject to Yale's Title IX policies or disciplinary procedures. See, UWC Procedures, Section 4.1 at https://uwc.yale.edu/policies-procedures/uwc-procedures. Yale is unaware whether CMHC, Ms. Perez's employer, had any similar policies or disciplinary procedures through which Plaintiff could have filed a complaint with CMHC against Ms. Perez. Yale is also unaware as to whether Plaintiff made any attempt to invoke his right to pursue a complaint pursuant to Title IX against Ms. Perez's employer, CMHC.

After filing Ms. Perez's formal UWC complaint, Yale was notified that Plaintiff had filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO")

---

[4] During Yale's UWC fact-finding, Ms. Perez reported that Plaintiff abided by the instructions to avoid interacting with her from May to September, 2022, but thereafter resumed his stalking.

[5] During Yale's UWC fact-finding, Ms. Perez reported that co-workers reported to her that they had seen Plaintiff outside of her office. A phlebotomist informed Ms. Perez that Plaintiff came down daily and that the phlebotomist had observed him looking into Ms. Perez's office. On one occasion, Ms. Perez saw Plaintiff outside her office twice in one day.

[6] Plaintiff refers to this complaint as a "Title IX complaint." Since the UWC procedures are not the only Title IX process at Yale, the complaint filed on behalf of Ms. Perez is more properly described as a "UWC complaint." The UWC Procedures can be found online at https://uwc.yale.edu/policies-procedures/uwc-procedures.

alleging that Yale discriminated against Plaintiff on the basis of his gender and perceived mental disability, retaliated against him, and harassed him when Yale filed Ms. Perez's UWC complaint and then denied Plaintiff the opportunity to file a similar complaint against Ms. Perez. *Id.,* ¶ 27, 24. After the CHRO determined that there was no reasonable possibility that investigating Plaintiff's complaint would result in a finding of reasonable cause, it granted Plaintiff a release of jurisdiction. *Id.*, at 4. Plaintiff thereafter brought the instant action, in which he again claims that Yale discriminated against him on the basis of his gender when it filed a UWC complaint on behalf of Ms. Perez, but denied him the same opportunity to file a complaint of his own. Plaintiff's District Court Complaint is completely devoid of any particularized allegations suggesting that Yale acted with gender bias. Therefore, Plaintiff's claims against Yale should be dismissed with prejudice.

## II.    STANDARD OF REVIEW

The Supreme Court has ruled that where, as here, the plaintiff has failed to plead sufficient facts to state a claim to relief that is facially plausible, the claim must be dismissed. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Two years after the *Twombly* decision, the Supreme Court explained that to sustain this burden of proof, the plaintiff must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is insufficient if it offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action;" it similarly fails if the plaintiff has not "nudged [its] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. Thus, a motion to dismiss is properly granted when "it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 58 (2d Cir. 1985).

For the reasons set forth below, all of Plaintiff's claims against Yale fail to state a claim upon which relief can be granted because, even assuming the truth of Plaintiff's allegations and drawing all reasonable inferences in his favor, he can prove no set of facts in support of his claims that would entitle him to relief.

## III.    ARGUMENT

### A.  Title IX Claims

Plaintiff asserts claims of gender discrimination and due process violations under Title IX. With respect to his gender discrimination claim, Plaintiff has failed to assert any specific factual allegation – as opposed to rank conjecture and speculation – to suggest that any aspect of Yale's UWC process was tainted by gender bias. Plaintiff's claim alleging constitutional due process violations is deficient for the additional reason that Yale is not a state actor, a necessary element of such a claim. But even if the Court considers Plaintiff's due process claim, it fails for the same reasons his Title IX gender discrimination claim does—it lacks any particularized allegations suggesting gender bias.

#### i.      *Gender Discrimination (Count One)*

Plaintiff's claim for gender discrimination under Title IX should be dismissed because he has failed to allege the essential component of such a claim: that he was discriminated against *on the basis of his gender.* In relevant part, Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). To raise a cognizable claim of gender discrimination under Title IX, Plaintiff must plausibly allege that "a particular course of action [was undertaken] at

least in part *because of*, not merely in spite of, its adverse effects upon" his gender. *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (emphasis added).

"Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Doe v. Colgate Univ.*, 760 Fed. App'x 22, 30 (2d Cir. 2019) (internal quotations omitted).  Plaintiff asserts that Yale violated Title IX by refusing to dismiss Ms. Perez's UWC complaint and instead opening an investigation into Plaintiff's conduct, while at the same time denying Plaintiff's request to file his own UWC complaint against Ms. Perez. Compl. ¶ 58. "In this circuit, Title IX claims based on discipline usually fall within two categories: (1) claims of an erroneous outcome from a flawed proceeding, and (2) claims of selective enforcement." *Simons v. Yale Univ.*, 2024 WL 182208, at *13 (D. Conn. Jan. 17, 2024) (Williams, J.) (citations omitted). "The first category captures innocent plaintiffs who are wrongly found guilty of committing a disciplinary offense, while the second includes claims that, regardless of the [individual's] guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the [individual's] gender." *Doe v. Avon Old Farms School, Inc.*, 2023 WL 2742330, at *15 (D. Conn. Mar. 31, 2023) (Meyer, J.) (citation and internal quotations omitted). "Plaintiffs may plead in the alternative that they are in both categories, but in neither case do wholly conclusory allegations suffice for purposes of Rule 12(b)(6)." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994).

While Plaintiff claims that "Yale engaged . . . in . . . *selective enforcement* and gender bias when it brought forth that Title IX charge" and "engaged in further *selective enforcement* on the basis of gender bias when Plaintiff made a formal request to also file a Title IX complaint against Perez and his request was denied . . ." Compl., ¶¶ 33–34 (emphasis added), the Complaint is not a model of clarity. Therefore, Yale will analyze Plaintiff's claims under both

the selective enforcement and erroneous outcome theories. As will be demonstrated below, Plaintiff's claim fails under either theory.

### a. *Selective Enforcement*

Plaintiff fails to sufficiently allege that he was subject to discriminatory selective enforcement on the basis of his gender because he does not, and cannot, demonstrate that another similarly situated employee was treated differently, let alone better. To survive a motion to dismiss on a selective enforcement theory, Plaintiff "must show: 1) similarly situated female [employees] at [Yale] were treated differently during investigations and disciplinary proceedings concerning sexual assault; and 2) the Defendant[] had the requisite discriminatory intent." *Doe v. New York Univ.*, No. 19 Civ. 00744, 2020 WL 564264, at *6 (S.D.N.Y. Feb. 5, 2020). "The male plaintiff must show that the [employer's] actions against [him] were motivated by his gender and that a similarly situated woman would not have been subjected to the same disciplinary proceedings." *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 480 (S.D.N.Y. 2015).

To meet his burden of demonstrating that another employee is "similarly situated," Plaintiff must identify an employee who is similarly situated to him in all material respects. *See Ruiz v. Cty. of Rockland*, 609 F.3d 486, 494 (2d Cir. 2010). "[T]he issue of whether fellow employees are similarly situated is somewhat strict." *Brown v. Middaugh*, 41 F. Supp. 2d 172, 184 (N.D.N.Y. 1999). "Employees are not 'similarly situated' merely because their conduct might have been analogized." *Mazzella v. RCA Global Commc'ns, Inc.*, 642 F. Supp. 1531, 1547 (S.D.N.Y. 1986). Rather, to be similarly situated, the "other employees must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their

conduct or the appropriate discipline for it." *Id.* (citations omitted); *see also, e.g., Gannon v. UPS*, 529 Fed. App'x 102 (2d Cir. July 16, 2013) (three employees who worked in a different division and were disciplined by a different division manager than the plaintiff were not similarly situated as a matter of law); *Iuorno v. DuPont Pharms. Co.*, 129 Fed. App'x 637, 641 (2d Cir. Jan. 31, 2005) (where allegedly comparable employees reported to a different supervisor than the plaintiff, they were not similarly situated to the plaintiff for the purposes of establishing an employment discrimination claim).

Plaintiff relies on Ms. Perez as a similarly situated employee in an attempt to demonstrate discrimination, yet he ignores the critical fact that Ms. Perez *was not a Yale employee*. Indeed, Plaintiff even admits as much in his Complaint. *See* Compl. ¶ 8. Ms. Perez was employed by CMHC, not Yale. *Id.* As a matter of law, therefore, Ms. Perez is not, and cannot, be similarly situated to Plaintiff. As a non-Yale employee, it is axiomatic that Ms. Perez could not "have reported to the same supervisor" as Plaintiff, nor could she be "subject to the same standards governing performance evaluation and discipline" as Plaintiff. *Mazzella*, 642 F. Supp. at 1547. Indeed, Yale had no authority to institute a UWC complaint against Ms. Perez, given that she was not employed at Yale and, thus, not subject to Yale's Title IX policies or disciplinary procedures. See, UWC Procedures, Section 4.1.

This glaring difference also underscores the fact that Yale engaged in no discrimination as alleged by Plaintiff. Yale's decision to address Ms. Perez's complaints regarding Plaintiff's conduct through the UWC procedures while declining to pursue a UWC complaint against Ms. Perez was not based on Plaintiff's or Ms. Perez's gender, but rather on the fact that Ms. Perez was not a Yale employee subject to its Title IX enforcement policies. See, UWC Procedures,

Section 4.1. Plaintiff has not identified a single employee, let alone any similarly situated female employee, who was treated more favorably than Plaintiff.

Because Plaintiff has failed to identify any similarly situated employee outside of his alleged protected class who was treated more favorably than he, he has not stated a claim that he was subject to discriminatory selective enforcement under Title IX. Therefore, Plaintiff has not properly alleged a selective enforcement claim.

   *b.   Erroneous Outcome*

Plaintiff's Complaint does not include a single plausible allegation suggesting that any purported errors or omissions in the investigative or disciplinary process are attributable to intentional gender bias. A plaintiff claiming "that an erroneous outcome was reached must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding." *Yusuf*, 35 F.3d at 715. "However, allegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss." *Id.* Critically, Plaintiff "must thus also allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Id.* In *Yusuf,* the Second Circuit provided examples of the kinds of allegations necessary to state a Title IX claim in this context: "Such allegations might include, *inter alia,* statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Id.*

Plaintiff makes no such allegations here. Nowhere in his Complaint, for example, does Plaintiff allege that any Yale official or employee said, or even intimated, anything related to Plaintiff's gender. Instead, Plaintiff alleges, in one instance, and in entirely conclusory fashion,

that "Yale erred in its conclusion that Plaintiff's conduct was severe, pervasive, and objectively offensive under the Universities [sic] Title IX policy . . ." Compl. ¶ 60. Such a claim, however, fails to allege any facts, much less particular facts, sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding. More importantly, it does not even attempt to attribute any gender bias to the otherwise conclusory claim that Yale's decision was erroneous.

While Plaintiff may be unhappy with the outcome of the disciplinary proceedings and the resulting sanctions, "one case by an individual who was subjectively dissatisfied with a result does not" rise to the level of a Title IX violation. *Mallory v. Ohio University*, 76 Fed. App'x 634, 640 (6th Cir. 2003) (citing to *Yusuf*, 35 F.3d at 715). *Yusuf* makes clear that, regardless of how a Title IX claim is framed, Plaintiff must carry his burden of plausibly alleging intentional discrimination on the basis of gender. *Yusuf*, 35 F.3d at 715. To put it another way, it is insufficient to merely allege that a particular outcome in a university disciplinary proceeding was mistaken, or that a particular employee was treated more favorably than Plaintiff; what is required is a "plausible" allegation that the decision to sanction Plaintiff was motivated by his gender. *See id.* No such allegation is present in this Complaint.

Accordingly, whether under the theory of selective enforcement or erroneous outcome, Plaintiff has failed to state a claim of gender discrimination under Title IX, and Count One should be dismissed.

### ii.    *Due Process Violation (Count Six)*

Plaintiff's second theory of liability under Title IX alleges that Yale, in violation of Plaintiff's constitutional due process rights, subjected Plaintiff to double jeopardy when it

opened an investigation into Plaintiff's conduct on the basis of Ms. Perez's formal UWC complaint under Yale's UWC Procedures.

At the outset, Plaintiff's claim that Yale's disciplinary proceedings denied him constitutional due process, *see* Compl. ¶¶ 114–15, fails as a matter of law. Claims alleging a violation of constitutional equal protection or due process can only be brought against state actors. *See Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (equal protection); *U.S. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO,* 954 F.2d 801, 806 (2d Cir. 1992) (due process). Since Yale is a private entity, and not a state actor, "the federal Constitution does not establish the level of due process that [Yale] had to give [Plaintiff] in his disciplinary proceeding." *Yu v. Vassar College*, 97 F. Supp. 3d 448, 462 (S.D.N.Y. 2015). Moreover, Plaintiff does not even attempt to allege that Yale is a state actor. On this basis alone, Count Six of the Complaint must be dismissed.

Count Six also fails for the same reasons that Plaintiff's Title IX gender discrimination claim in Count One does—it lacks any particularized allegations suggesting gender bias. Therefore, Count Six must be dismissed.

**B.   Title VII Claims**

Plaintiff asserts claims of both gender discrimination and retaliation under Title VII, but fails to set forth sufficient allegations to state a viable Title VII claim under either of these theories.

### i.       *Gender Discrimination (Count Two)*

Plaintiff's claim of disparate treatment under Title VII fails as a matter of law because the Complaint does not allege sufficient facts to demonstrate that any alleged adverse action taken by Yale occurred under circumstances giving rise to an inference of discrimination based on

Plaintiff's gender. Title VII prohibits an employer from "discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . ." 42 U.S.C. § 2000e-2(a)(1). To establish a Title VII discrimination claim, Plaintiff must proffer either direct evidence of Yale's discriminatory intent or rely on the indirect burden-shifting method outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Gorham v. Town of Trumbull Bd. of Educ.*, 7 F. Supp. 3d 218, 230 (D. Conn. 2014) (Thompson, J.). Because Plaintiff does not allege any direct evidence of discrimination, his claims are governed by the *McDonnell Douglas* burden-shifting framework. Notwithstanding the shifting burdens, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Under *McDonnell Douglas*, Plaintiff bears the initial burden of establishing a *prima facie* case of gender discrimination by demonstrating that: (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) Yale took adverse action against him; and (4) that action occurred under circumstances giving rise to an inference of discrimination. *See Williams v. R.H. Donnelley Corp.*, 368 F. 3d 123, 126 (2d Cir. 2004) (citing *McDonnell Douglas*, 411 U.S. at 802). If Plaintiff establishes his *prima facie* case, a presumption of discrimination arises and the burden of production shifts to Yale to articulate a "legitimate, nondiscriminatory reason for the adverse employment action[s]." *Farias v. Instructional Sys., Inc.*, 259 F.3d 98 (2d Cir. 2001). If Yale meets this burden of production, the presumption of discrimination drops out of the analysis, and Plaintiff's claim must be dismissed unless Plaintiff can demonstrate that Yale's proffered legitimate, nondiscriminatory reasons were merely pretextual. The Court need not

13

concern itself with any shifting burdens here because Plaintiff has failed to allege a *prima facie* case of Title VII discrimination.

For purposes of this Motion only, Yale does not dispute that Plaintiff satisfies the first three elements of a *prima facie* case of gender discrimination. Plaintiff, however, cannot meet his burden on the fourth prong because he has failed to allege any circumstances giving rise to an inference of discriminatory intent. In disparate treatment cases, a plaintiff may raise an inference of discrimination "by showing that the employer . . . treated him less favorably than a similarly situated employee outside his protected group." *Atterberry v. Ikon Office Sol., Inc.*, 2003 WL 22937719, at *4 (D. Conn. Dec. 10, 2003) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000)). For example, "[a] plaintiff may support an inference of [gender] discrimination by demonstrating that similarly situated employees of a different [gender] were treated more favorably." *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999). Here, Plaintiff's complaint contains no allegations suggesting that he was treated less favorably than a "similarly situated" employee because, as already explained above, Plaintiff and Ms. Perez are not at all similarly situated. *See* Section III. A. i., *supra*.

Because Plaintiff has failed to identify any similarly situated employee outside of his alleged protected class who was treated more favorably than he was treated, he cannot establish that he was subject to *any* discrimination on the basis of his gender under Title VII. Therefore, Count Two must be dismissed for failure to state a claim.

### ii.      *Retaliation (Count Four)*

Plaintiff's retaliation claim based on gender is insufficient because it fails to allege any causal connection between his filing of the CHRO complaint and any alleged adverse employment action.

Title VII prohibits retaliation against employees who exercise rights protected under the relevant statutes. 42 U.S.C. § 2000e-3(a). To state a claim for retaliation under Title VII, Plaintiff must allege that (1) he engaged in a statutorily protected activity; (2) the employer was aware of his participation in the protected activity; (3) Plaintiff suffered an adverse employment action; and (4) there was a causal link between the protected activity and the employer's action. *Vasquez v. Claire's Accessories, Inc.*, 392 F. Supp. 2d 342, 355 (D. Conn. 2005). Plaintiff's Complaint falls far short of making out his *prima facie* case.

While the gravamen of the retaliatory adverse action Plaintiff complains of in support of his retaliation claim is grounded in the allegation that Yale opened a UWC investigation into Plaintiff the same day Yale became aware that Plaintiff filed a complaint with the CHRO, *see* Compl. ¶¶ 80–81, 90–91, 96, Plaintiff also, in conclusory fashion, alleges that as a result of Yale's alleged retaliation, he has suffered additional adverse employment actions in that he "is unable to apply for career development awards" (that he may or may not be eligible for); that, on an unalleged date, his "employment contract was only renewed for a six (6) month term instead of the customary one (1) year term"; and that he has been "denied interviews" because "many" (but not all) "of those positions" (that he may or may not have even applied for) "require that he work within the CMHC building." *Id.*, at ¶ 64. Conspicuous by its absence is any allegation of the timing of any of these alleged "adverse employment actions." Thus, Plaintiff cannot establish causation through temporal proximity. Additionally, the Complaint does not contain a single allegation to suggest that Plaintiff had the qualifications for any of these alleged awards and/or positions. *See Woolfolk v. New York City Dept. of Educ.*, 2020 WL 1285835, at *7 (S.D.N.Y. Mar. 18, 2020) ("Plaintiff's allegations about not receiving certain interview offers for future employment are too speculative to constitute an adverse employment action."). As such, these

15

conclusory claims are insufficient to demonstrate *any* causal link between Plaintiff's filing of his CHRO complaint and Yale's alleged actions against Plaintiff.

The causation element can be proven two separate ways: "(1) indirectly, by showing that the protected activity was *followed closely by* discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. New York City Bd. of Educ.,* 232 F.3d 111, 117 (2d Cir. 2000) (emphasis added). However, when "timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2001) (finding that a lessening of plaintiff's job responsibilities due to deficient performance five months prior to plaintiff's filing of an EEOC complaint precluded any causal connection between plaintiff's complaint and his firing); *Deebs v. Alstom Transp., Inc.*, 346 Fed. App'x 654, 658 (2d Cir. 2009) (nondiscriminatory adverse employment actions based on poor performance prior to plaintiff's filing of an EEOC complaint precluded causal connection despite temporal proximity).

Here, Plaintiff alleges that he engaged in protected activity by filing a complaint with the CHRO charging Yale with gender discrimination, and that Yale first learned of his CHRO complaint on January 9, 2023. Compl. ¶ 90. Plaintiff further alleges that, on the same date Yale learned of the CHRO complaint, Yale retaliated against Plaintiff when it opened an investigation into Plaintiff based on Ms. Perez's claims of sexual harassment. *Id.,* at ¶¶ 90–91. In making such a claim, however, Plaintiff ignores the fact that Ms. Perez contacted Yale on or about November 22, 2022, requesting that it open a formal investigation into Plaintiff's conduct. *See* Compl. ¶ 25.

16

Accordingly, Yale's UWC investigation was set in motion nearly two months *before* Plaintiff filed his complaint with the CHRO. Plaintiff, therefore, has not, and cannot, as a matter of law, satisfy his burden of demonstrating that his alleged protected activity was *followed closely by* any discriminatory treatment. *Gordon,* 232 F.3d at 117.  *See also*, *Sawka v. ADP, Inc.*, 2015 WL 5708571 D. Conn. (Sept. 29, 2015) (retaliation claim failed because plaintiff could not show causal connection between any possible adverse action and his complaint; the negative performance evaluations occurred two months before the plaintiff made his complaint and could not have been caused by the complaint); *Bernard v. JP Morgan Chase Bank NA*, 408 Fed. App'x. 465 (2d Cir. 2011) (concluding that district court correctly granted summary judgment on retaliation claim: "Since [defendant's] adverse employment actions against [plaintiff] began several months before [plaintiff] engaged in any potentially protective activity, [plaintiff] cannot demonstrate a causal connection between them."); *James-Gray v. Hanes Hosiery, Inc., Div. of Sara Lee*, 1998 WL 525819 (S.D. New York Aug. 21, 1998) (conduct could not be deemed retaliatory because it began at least two months before the plaintiff filed her charge with the New York State Division of Human Rights).

Under these circumstances, where the alleged adverse action took place *before* the time of the alleged protected activity, there can be no inference of retaliation. *See Slattery,* 248 F.3d at 95; *Weichman v. Chubb & Son*, 552 F. Supp. 2d 271, 287 (D. Conn. 2008) (Squatrito, J.) (holding that plaintiff failed to establish a prima facie case of retaliation where the alleged discriminatory retaliation occurred before alleged protected activity). To counter this hard fact, Plaintiff attempts to point to additional "adverse" actions to support his claim of retaliation, including his alleged inability to apply for unidentified awards and positions, and Yale's decision to renew his contract for an allegedly reduced period of six months. Compl. ¶ 64. Plaintiff,

however, fails to state *when* these allegedly adverse actions took place. There simply can be no inference of discrimination when Plaintiff has failed to allege that any allegedly adverse action closely followed his filing of the CHRO complaint.

For the reasons discussed above, Plaintiff has not established a *prima facie* case of retaliation because he has not alleged sufficient facts to establish the required causal connection. Therefore, Count Four of his Complaint must be dismissed.

### C. **Breach of Implied Contract** (Count Five)

In Count Five of his Complaint, Plaintiff contends that Yale's anti-discrimination, harassment, and retaliation policies are tantamount to a contract between him and Yale, and that Yale breached this so-called contract by, among other things, initiating a UWC complaint against Plaintiff on behalf of Ms. Perez and subsequently refusing to allow Plaintiff to initiate a UWC complaint against Ms. Perez. (Compl. ¶¶ 105–108). Count Five warrants dismissal because Yale's anti-discrimination policies, which are posted online and upon which the claim is based, *see* Compl. ¶¶ 102–03, cannot give rise to any contractual obligation, because those policies do not represent an agreement between Yale and Plaintiff.

"Under Connecticut law, a breach of contract claim has four elements: (1) the formation of an agreement, (2) performance by one party, (3) breach of the agreement by the other party, and (4) damages." *Simons v. Yale Univ.*, 2024 WL 182208, at *1 (D. Conn. Jan. 17, 2024) (Williams, J.) (citations omitted). "A contract implied in fact, like an express contract, depends on actual agreement, and the party charged must have agreed, either by words or action or conduct, to undertake a contractual commitment to the party seeking to enforce such a commitment." *Peralta v. Cendant Corp.*, 123 F. Supp. 2d 65, 84 (D. Conn. 2000) (Arterton, J.).

Yale's anti-discrimination policy, which prohibits discrimination, harassment, and retaliation in violation of federal, state, and local anti-discrimination statutes, is not an enforceable contract between Yale and Plaintiff because it "does not indicate that [Yale] is undertaking any contractual obligations towards [Plaintiff]; rather, it obliges [Yale] to comply with federal and state anti-discrimination laws, and to undertake an investigation upon receiving complaints of discrimination and/or harassment." *See Peralta*, 123 F. Supp. 2d at 83 (rejecting breach of contract claim based on non-discrimination policy). "As any promises in the policy are general statements of adherence to the anti-discrimination laws, standing alone they do not create a separate and independent contractual obligation." *Id.* at 84.

Contrary to the theory underlying Plaintiff's breach of contract claim, the notion that "any deviation by an employer from its anti-discrimination policy or from the federal or state anti-discrimination laws gives rise to a claim for breach of an implied contract . . . is not the law." *Pecoraro v. New Haven Register*, 344 F. Supp. 2d 840, 844 (D. Conn. 2004) (Eginton, J.). "Federal policy would not be served by allowing contractual recovery under [non-discrimination] policies and procedures, as employers might thus be chary of publicizing and enforcing their complaint procedures." *Peralta*, 123 F. Supp. 2d at 84 (citing *Malik v. Carrier Corp.*, 202 F.3d 97, 106 (2d Cir 2000) ("The issue here is not the proper balance between employee rights and employer authority under state law. The issue is how to ensure that federal policies are not undermined by imposing on employers legal duties enforceable by damages that reduce their incentives to take reasonable corrective action as required by federal law.").

Count Five fails to state a claim because there can be no breach of contract absent the existence of an enforceable contract. The Court should therefore dismiss Count Five.

### D.  <u>Intentional Infliction of Emotional Distress</u> (Count Seven)

Count Seven of Plaintiff's Complaint fails to allege conduct that even approaches the high bar of "extreme and outrageous" conduct that is required to sustain a cause of action for the intentional infliction of emotional distress ("IIED") under Connecticut law. To establish an IIED claim, Plaintiff must show "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210 (2000).

For purposes of an IIED claim, extreme and outrageous conduct is defined as conduct that "exceeds all bounds usually tolerated by decent society," *Crocco v. Advance Stores Co. Inc.*, 421 F. Supp. 2d 485, 503 (D. Conn. 2006) (Hall, J.), and encompasses only conduct that is "regarded as atrocious, and utterly intolerable in a civilized community . . . [where] recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!" *Appleton*, 254 Conn. at 211. Conduct that is "merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." *Id.*

The conduct alleged in the present Complaint comes nowhere near the level of "extreme and outrageous" as defined by Connecticut case law. Plaintiff claims that he was subjected to "severe emotional distress" when Yale, mandated by the Title IX regulations to do so, opened an investigation into Plaintiff's conduct based on Ms. Perez's claims of stalking and sexual harassment and thereafter concluded that Plaintiff had in fact engaged in the misconduct complained of. Compl. ¶¶ 127-131. While Plaintiff may believe that this treatment was unfair or

unpleasant, it is not conduct that "go[es] beyond all possible bounds of decency . . ." *Perez-Dickson v. City of Bridgeport*, 304 Conn. 483, 527 (2012). Indeed, factual scenarios in which plaintiffs have suffered truly degrading and mean-spirited behavior by the defendant employer repeatedly have been found to have fallen short of the level required to constitute "extreme and outrageous" conduct. *See Appleton*, 254 Conn. at 211-12 (summary judgment against plaintiff on IIED claim was properly granted where defendants made condescending comments about plaintiff in front of colleagues, questioned plaintiff's vision and ability to read, informed plaintiff's daughter that she was acting differently and should take time off, asked police to escort plaintiff from school, required plaintiff to subject herself to psychiatric testing, forced plaintiff to take leave of absence, suspended plaintiff, and forced plaintiff to resign); *Tracy v. New Milford Public Schools*, 101 Conn. App. 560, 562-70 (2007) (motion to strike IIED claim properly granted where plaintiff claimed that defendants conspired to engage in a pattern of harassment including denial of a position, initiation of disciplinary actions without proper investigation, defamation, and intimidation of plaintiff); *see also Allen v. Egan*, 303 F. Supp. 2d 71, 78 (D. Conn. 2004) ("Although employment discrimination is illegal, it does not per se give rise to a claim for [IIED].").

In the employment context where, as here, Plaintiff's claim of IIED is based upon his allegations of gender discrimination and retaliation, "the court looks to the employer's conduct, not the motive behind the conduct, to determine if it was extreme or outrageous." *Carone v. Mascolo*, No. 3:06 cv01094, 2007 WL 2318818, at *3 (D. Conn. Aug. 14, 2007) (Squatrito, J.). In an IIED claim, it is not sufficient to simply allege discrimination or retaliation by the defendant (which Plaintiff has not, and cannot, prove in any event), as Connecticut courts consistently dismiss employment-related IIED claims that are based on such allegations. *See,*

*e.g., Jamilik v. Yale Univ.*, No. 3:06 CV 0566(PCD), 2007 WL 214607, at *3–4 (D. Conn. Jan. 24, 2007) (Dorsey, J.) (dismissing IIED claim, where plaintiff alleged that defendants retaliated against her for filing CHRO complaint); *Armstead v. Stop & Shop Cos.,* No. 3:01 CV 1489 JBA, 2003 WL 1343245, at *5 (D. Conn. Mar. 17, 2003) (Arterton, J.) (discrimination and retaliation, including discharge, do not constitute IIED "unless the manifesting conduct is extreme and outrageous"); *White v. Martin*, 23 F. Supp. 2d 203, 208 (D. Conn. 1998) (Goettel, J.) (employer's alleged gender discrimination and harassment not extreme and outrageous), *aff'd,* 198 F.3d 235 (2d Cir. 1999).

Plaintiff has failed to allege conduct rising anywhere near the level required to sustain a cause of action for intentional infliction of emotional distress under Connecticut law and, therefore, Count Seven should be dismissed for failure to state a claim.

## IV.    CONCLUSION

For the reasons stated above, Yale's Motion to Dismiss should be granted in its entirety.

THE DEFENDANT,
YALE SCHOOL OF MEDICINE

By:   *Patrick M. Noonan* _____
PATRICK M. NOONAN – CT00189
MARIA LAURATO – CT31443
Carmody Torrance Sandak & Hennessey LLP
741 Boston Post Road, Suite 306
Guilford, CT  06437
Telephone: (203) 458-9168
Fax: (203) 458-4444
Email:  pnoonan@carmodylaw.com;
mlaurato@carmodylaw.com

## <u>CERTIFICATION</u>

I hereby certify that, on the above-written date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

By: *Patrick M. Noonan*
Patrick M. Noonan