UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SIMON ZHORNITSKY, <br>    *Plaintiff*, <br> <br> v. <br> <br> YALE SCHOOL OF MEDICINE, ET AL., <br>    *Defendants*. | : <br> : <br> : Civil Action No: 3:24-cv-00018-KAD <br> : <br> : <br> : <br> :       May 19, 2024 |

### MEMORANDUM OF LAW IN OPPOSITION
### TO MOTION TO DISMISS BY YALE SCHOOL OF MEDICINE [ECF NO. 10]

#### I. INTRODUCTION

The plaintiff, Simon Zhornitsky, Ph.D. ("Dr. Zhornitsky" or "plaintiff"), was wrongfully subjected to sexual misconduct proceedings that wrongly determined he committed acts of sexual harassment and stalking. These erroneous determinations caused him to be banned from campus, suspended, and ultimately, separated from employment with the Yale School of Medicine ("Yale"). After being investigated once for sending social media messages that were not of a sexual or sexually harassing nature and after being cleared of all wrongdoing, Dr. Zhornitsky was told to cease communication with a CMHC employee ("complainant") who had filed a complaint. Dr. Zhornitsky complied with the request. But even though he had never sexually harassed the complainant, and complied with the directive to cease contact, Yale would later prosecute Dr. Zhornitsky again for the same messages and disregarded substantial evidence to conclude that he had stalked the complainant, when he had merely been on the same floor as the complainant for legitimate business reasons.

Despite the standard of review on a Rule 12 motion to dismiss, Yale regrettably continues to publish a false and biased narrative against the plaintiff in its moving papers, asserting that "despite . . . previous instructions[,] . . . to avoid interaction with [the complainant], [Dr.

Zhornitsky] began lingering outside [her] office and in the wing of the CMHC building where she worked." ECF No. 10-1 at 3-4 & nn. 4-5. This Court should disregard Yale's impertinent and unsupported assertions, which are outside the pleadings, or convert Yale's motion to a motion for summary judgment and allow the plaintiff an opportunity to conduct appropriate discovery and submit additional supporting material contemplated by Rule 56.[1] To the extent this court treats this motion as a motion to dismiss, the allegations of the plaintiff's complaint, which this Court is bound to accept as true, adequately allege valid claims under Title IX and Title VII.

Yale's motion to dismiss should therefore be denied.[2]

## II. LAW

On a Rule 12(b)(6) motion, the Court is required "to accept as true the facts alleged in the complaint, consider those facts in the light most favorable to the plaintiff, and determine whether the complaint sets forth a plausible claim for relief." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015).

"Once the District Court was presented with matters outside the pleadings, Rule 12(b) afforded two options. The court could have excluded the extrinsic documents. Because it elected not to do so, however, the court was obligated to convert the motion to one for summary judgment and give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56." *Chambers v. Time Warner*, 282 F.3d 147, 154 (2d Cir. 2002).

---

[1] Each of the footnotes in Yale's memorandum are simply Yale's contentions, unsupported by any pleading, outside the record, and should be disregarded.
[2] The plaintiff abandons his claims for breach of implied contract and intentional infliction of emotional distress.

### III. ARGUMENT

1. **Counts One, Two, and Six[3] adequately allege Title VII and IX gender discrimination by Yale**

    A.  **Legal Standard**

To overcome a Rule 12 motion to dismiss, a plaintiff claiming discrimination under Title VII must demonstrate "that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). "We have . . . long interpreted Title IX by looking to the caselaw interpreting Title VII, and . . have therefore held that Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." *Menaker v. Hofstra*, 935 F.3d 20, 31 (2d Cir. 2019)

Yale's memorandum strangely omits the Second Circuit's controlling precedent in *Menaker* and *Doe v. Columbia*, 831 F.3d 46 (2d Cir. 2016), which concerned pleading standards for Title VII and Title IX claims in the context of academic disciplinary proceedings brought against men allegedly falsely accused of sexual misconduct by women. *Menaker* and *Doe* both reversed universities' successful Rule 12 motions to dismiss; *Menaker* was a Title VII case, and *Doe* a Title IX case, but *Menaker* clarified that "the holding of *Doe v. Columbia* is not limited to Title IX claims rather than Title VII claims." 935 F.3d at 32.

The *Menaker* Court reiterated that to survive a motion to dismiss, a plaintiff "need only establish 'a prima facie case of sex discrimination by demonstrating that (1) he was within the

---

[3] Because the plaintiff respectfully concedes that it appears Counts One and Six may be somewhat duplicative, but believes that both counts adequately allege gender discrimination under Title IX, the plaintiff discusses these counts together. If the Court agrees that they are duplicative, the plaintiff respectfully requests leave to consolidate these allegations into one count in an amended complaint.

protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." The Court held that at the Rule 12 stage, the plaintiff "need only allege facts that give 'plausible support to a minimal inference of discriminatory motivation.'" *Id.* at 30-31 (citing *Littlejohn*, 795 F.3d at 306).

What sort of irregularities meet the standard of "clearly irregular investigative or adjudicative process," 935 F.3d at 34, has not been exhaustively defined, but *Menaker* and *Doe* offer "some guidance on this issue." *Id.* "For instance, when the evidence substantially favors one party's version of a disputed matter, but an evaluator forms a conclusion in favor of the other side (without an apparent reason based in the evidence), it is plausible to infer (although by no means necessarily correct) that the evaluator has been influenced by bias." *Id.* (citing *Doe*, 831 F.3d at 57). Allegations that a university disregarded its own Title IX policies were also found to constitute clear procedural irregularities at the Rule 12 stage. *Id.* at 35 ("Menaker alleges that Hofstra completely disregarded the process provided for in its written 'Harassment Policy.'").

As for pressure on the university, *Menaker* specifically held that the pressure need not be "particularly acute." 935 F.3d at 33. "[W]hen combined with clear procedural irregularities in a university's response to allegations of sexual misconduct, even *minimal* evidence of pressure on the university to act based on invidious stereotypes" will permit a plausible inference of sex discrimination.

For purposes of the motion, Yale concedes that the plaintiff has adequately pleaded the first three elements of a *prima facie* claim of gender discrimination. ECF No. 10-1 at 14. Yale only contests whether the plaintiff has, in his complaint, alleged facts that give plausible support to a minimal inference of discriminatory motivation. But like in *Menaker* and in *Doe*, Dr.

4

Zhornitsky has adequately alleged facts that give plausible support to a minimal inference of discriminatory motivation in this case, and Yale's motion to dismiss should be denied.

### B. Dr. Zhornitsky adequately alleges facts that give more than minimal support to a plausible inference of discriminatory intent by Yale

Yale acknowledges that Title IX claims can arise from "an erroneous outcome from a flawed proceeding," ECF No. 10-1 at 7 (citing *Simons v. Yale*, 2024 WL 182208, at *13 (D.Conn. Jan. 17, 2024)). Yale argues that the plaintiff failed to include within his complaint "a single plausible allegation suggesting that any purported errors or omissions in the investigative or disciplinary process are attributable to intentional gender bias." *Id.* at 10 (citing *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)).

We disagree, because the complaint adequately alleges both clear procedural anomalies in the proceedings taking Yale's adverse action against Dr. Zhornitsky and with more than the "*minimal* evidence of pressure on the university to act based on invidious stereotypes," 935 F.3d at 33 (emphasis in original), required to permit a plausible inference of sex discrimination at the Rule 12 stage, along with ample other evidence of selective and disparate treatment necessary to support a Title VII/Title IX claim at the pleadings stage.

#### 1. *The complaint alleges clear procedural irregularities and pressure to act*

The complaint alleges that Yale initiated a Title IX proceeding against the plaintiff shortly after the plaintiff initiated a complaint with the CHRO, Complaint, ¶ 27, itself a procedural irregularity.

This Title IX proceeding was initiated despite the complainant's prior complaints against the plaintiff "being determined not to rise to the level of sexual harassment and/or stalking and/or were found to be unsubstantiated by Title IX Coordinator Jason Killheffer." ¶ 29.

5

The proceeding was also initiated in violation of Title IX regulations, which mandate that "the person bringing the complaint is participating in or seeking to participate in a Yale program or activity and that the misconduct must occur at a Yale campus, a Yale sponsored event, or within a building owned or controlled by a student organization officially recognized by Yale." ¶¶ 31-32.

Yale knew that the plaintiff had been cleared of wrongdoing but proceeded anyway. ¶ 34. But although the complainant was allowed to bring a Title IX complaint despite not being affiliated with Yale, in violation of Title IX regulations, the plaintiff was not allowed to bring a Title IX complaint against the complainant, because she was not a student, employee, or member of a Yale program, ¶ 34.

At the time Yale began its proceedings, the complainant had recently indicated that she only wanted to "prevent future incidences," and "ensure that there is documentation," ¶ 25, and was not persisting with a complaint based on any past incidents, *id.* The complainant was simply "unhappy" with the fact that the plaintiff was returning back to his position with Yale, ¶ 76.

Although Yale had hired third party investigators and conducted due diligence in similar cases, it did not do so in Dr. Zhornitsky's case, ¶ 59. Yale subjected Dr. Zhornitsky to double punishment for the same offenses, punishing him again for Instagram messages that had been sent months earlier, after which he had been warned not to contact the complainant, a directive he had complied with. ¶¶ 61-63. Dr. Zhornitsky is male, and the complainant was female. The complaint alleges that Yale was acting at the behest of the complainant, despite the complainant not being a student, employee, or member of any Yale program. ¶¶ 8, 34, 50.

The complaint alleges that although the complainant, not a member of any Yale program, was allowed to initiate and pursue proceedings against Dr. Zhornitsky, Dr. Zhornitsky was unable to initiate any proceedings of his own against the complainant. ¶ 34.

### 2. *The alleged procedural irregularities and pressure on Yale suffice to state valid Title IX and VII claims*

In this case, Dr. Zhornitsky adequately alleges both clear procedural irregularities and pressure on the university to act. He alleges that, pressured by the complainant to act on a female's complaint of sexual misconduct against a male, Yale made multiple determinations that favored the complainant's version of a disputed matter, when the evidence substantially favored his version. The allegations of Dr. Zhornitsky's complaint, read together and drawing all inferences in his favor, suffice to show more than minimal support for an inference of gender discrimination by Yale. To the extent the Court believes that greater specificity is required to show procedural irregularities or pressure on Yale sufficient to support an inference of discrimination, the plaintiff respectfully requests leave to amend the complaint to provide greater specificity, such as by granting the motion to dismiss without prejudice to refiling.

To be sure, we believe the complaint is adequate as it stands. The complaint contains specific allegations of procedural irregularity and pressure on the defendant. Dr. Zhornitsky alleges that no message he ever sent the complainant was sexually harassing. ¶ 10. He alleges that in its first investigation, Yale found that any allegation of sexual harassment based on the messages was unsubstantiated. ¶ 17. But later, after proceedings were initiated against him again, Yale "tore through each and every . . . Instagram message," ¶ 37, and "classified those private messages as substantiating a charge of sexual harassment," *id.* This evaluation, the plaintiff alleges, "disregarded the fact that not only had Plaintiff been previously cleared of any wrong doing in relations to those Instagram messages, but it further disregarded the fact upon Plaintiff being notified to have no further contact with Perez, he never violated that directive," ¶ 38, and even used this flawed determination to charge the plaintiff with stalking, ¶ 39.

These are not the only matters for which the plaintiff adequately alleged that "the evidence substantially favor[ed] one party's version of a disputed matter, but [Yale] form[ed] a conclusion in favor of the other side," *Menaker*, 935 F.3d at 34.

Dr. Zhornitsky's job duties included performing bloodwork for Dr. Gustavo Angarita, and Dr. Zhornitsky was trained to perform those duties at the blood draw station on the second floor of the CMHC building, because it was staffed by a certified phlebotomist and was more automated, ¶ 19. Plaintiff performed those duties without incident until the week of September 12, 2022, when he was attending to a subject required to undergo a urine test and blood draw. While waiting for the subject to come out of the bathroom, the complainant walked by Dr. Zhornitsky on her way into an office. ¶ 20. The plaintiff did not acknowledge the complainant or contact her in any manner. *Id.* Dr. Zhornitsky was wrongfully accused of "hanging around the office," ¶ 21, and he was banned from the CMHC building pending investigation, *id.* But even though Yale confirmed that the plaintiff was on the second floor for legitimate business reasons by Dr. Angarita, Dr. Zhornitsky's supervisor, ¶ 22, and despite being cleared of any wrongdoing, *id.*, Yale would "disregard[] that evidence, giving [complainant] more weight than the Plaintiff's version of events despite the availability of evidence refuting her claims." ¶ 40. Moreover, Yale would conclude that Dr. Zhornitsky was impairing complainant's ability to access buildings and facilities operated by Yale, when complainant was not affiliated with Yale in any manner. ¶ 60.

The plaintiff provides further support for an inference of gender discrimination: although the complainant's status as neither a student, employee nor member of a Yale program did not stop Yale from bringing charges against him, ¶ 34, it did prevent him from bringing his own complaint against the complainant, *id.* Yale argues that their different employment statuses render them not similarly situated, ECF No. 10-1 at 9-10, but "[o]rdinarily, the question . . . is a question of fact for the jury." *Id. See also Radwan v. Manuel*, 55 F.4th 101, 132-139 (2d Cir.

2022) (reversing summary judgment in favor of the University of Connecticut on ground that circumstances surrounding misconduct of male student athletes was insufficiently similar to misconduct of the plaintiff). The plaintiff "must show she was similarly situated in all *material* respects to the individuals with whom she seeks to compare herself." *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000) (reversing and remanding grant of summary judgment in Title VII claim). For purposes of merely being able to file a complaint, Dr. Zhornitsky adequately alleges that he and the complainant were similarly situated in all *material* respects—given that Yale allowed the complainant to file a complaint against him, he alleges that he was similarly situated for purposes of being able to file his own complaint against her. But he was denied the opportunity to file his own Title IX complaint against the complainant, further evidence that provides support for an inference of discriminatory motive by Yale.

      **C.**    **The motion to dismiss the Title VII and IX gender discrimination claims should be denied.**

A plaintiff in a Title VII/Title IX case need not prove their *prima facie* case on a Rule 12 motion to dismiss. At this stage, only minimal support is required for an inference of discriminatory motive. The plaintiff's complaint meets that pleading standard. The detailed allegations in the plaintiff's complaint show that Yale (1) took an adverse action against Dr. Zhornitsky, an employee, (2) in response to allegations of sexual misconduct, (3) following a clearly irregular investigative or adjudicative process, (4) amid criticism for reacting inadequately to allegations of sexual misconduct by members of one sex, and (5) with ample other evidence of selective enforcement and disparate treatment based on gender. Accordingly, the plaintiff provided "the requisite support for a *prima facie* case of sex discrimination," *Menaker*, 935 F.3d at 33, in his complaint, and Yale's motion to dismiss the plaintiff's Title VII and Title IX claims of gender discrimination should be denied.

### 2. Count Four adequately alleges Title VII retaliation by Yale

#### A.     Legal Standard

As with the analysis of a disparate treatment claim, on a Rule 12 motion to dismiss, a plaintiff pleading a Title VII retaliation claim "need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Littlejohn*, 795 F.3d at 316 (discussing retaliation claim). To establish a presumption of retaliation at the initial stage of a Title VII litigation, the plaintiff must show (1) participation in a protected activity, (2) that the defendant knew of the protected activity, (3) an adverse employment action, and (4) a causal connection between the protected activity and the adverse employment action. *Id.* at 315-16 (citing *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)). Yale argues only that the allegations fail to sufficiently establish the required causal connection. ECF No. 10-1 at 14-18. We disagree for the following reasons.

#### B.     Dr. Zhornitsky adequately alleges facts that give plausible support to retaliation by Yale

Yale acknowledges that an inference of causation on a Title VII retaliation claim can be raised by temporal proximity between protected activity and adverse action. ECF No. 10-1 at 16. This case has very close temporal proximity. The plaintiff alleges that on January 9, 2023, after two months of "no . . . action" in regard to the complainant's complaints, ¶¶ 25-26, "upon Yale being notified by the Commission on Human Rights & Opportunities ("CHRO") that Plaintiff had filed a charge of discrimination, Yale retaliated against the Plaintiff wherein Diane Cornelius Charles, Yale Deputy Title IX Coordinator, notified the Yale University-Wide Committee on Sexual Misconduct that she was initiating a Title IX Sexual Misconduct complaint against the Plaintiff on behalf of [complainant]." ¶ 27.

10

This formal complaint was initiated without any evidence that the complainant herself wrote or signed any formal complaint. ¶ 91. In fact, it was based on conduct from many months earlier that had already been found not to constitute wrongdoing. ¶¶ 92-94. The complaint plausibly alleges that no action was being taken on the complaint until the defendant learned of the plaintiff's CHRO charge. Consequently, as a direct result of these actions, Dr. Zhornitsky's career development has been affected, he has been denied interviews, and his employment with Yale has ended, ¶ 64.

Yale argues that these allegations fail to demonstrate the temporal proximity required to show a causal connection at the Rule 12 stage because "Plaintiff ignores the fact that [complainant] contacted Yale on or about November 22, 2022, requesting that it open a formal investigation into Plaintiff's conduct." ECF No. 10-1 at 16. Thus, Yale argues, "Yale's UWC investigation was set in motion nearly two months *before* Plaintiff filed his complaint with the CHRO." *Id.* at 17.

This argument fails because it is improper, at the Rule 12 stage, for this Court to draw the inference that "Yale's UWC investigation was set in motion nearly two months *before* Plaintiff filed his complaint," *id.*, when plaintiff alleges that the November 22, 2022 contact did not request Yale to take further action based on past incidents, ¶ 25, Yale chose to take no further action based on that contact, ¶ 26, and Yale only decided to bring a formal complaint against the plaintiff after it learned of his CHRO complaint, ¶ 27. *See also* ¶¶ 90-95 (further detailed allegations from which a plausible inference of causal connection can be drawn).

In this case, the alleged adverse action—the formal complaint of sexual misconduct and the resulting harms to the plaintiff's professional standing and to the terms of his employment— are alleged to have occurred after the defendant learned of the plaintiff's protected activity. *See* ¶¶ 25-27, 90-95. Accordingly, the defendant's authorities, ECF No. 10-1 at 16-17, are inapposite,

11

as they speak to a different factual scenario than that alleged in the present case. Although the defendant claims that the plaintiff fails to state with specificity when he was denied the ability to apply for positions and when exactly his contract was not renewed, ECF No. 10-1 at 17, Dr. Zhornitsky adequately alleged that these professional consequences were the direct result of the formal Title IX complaint. At this stage of the litigation, in which the court is required to draw all reasonable inferences in the non-movant's favor and take all plausible allegations in the complaint as true, the plaintiff's allegations suffice to show a causal connection between protected activity and an adverse employment action strong enough to withstand a motion to dismiss the Title VII retaliation claim.

## IV. CONCLUSION

Yale's motion to dismiss relies upon Yale's version of the facts and ignoring detailed allegations in the plaintiff's complaint. When the plaintiff's complaint is considered under the appropriate standard of review for a motion to dismiss, it adequately alleges the elements of Title VII and IX claims against Yale. The motion to dismiss should therefore be denied.

Dated: May 19, 2024

Respectfully submitted,

THE PLAINTIFF,

SIMON ZHORNITSKY

**Alexander T. Taubes**
470 James Street
Suite 007
New Haven, Connecticut 06513
Telephone: (203) 909-0048
alextt@gmail.com
Federal Bar No.: ct30100