UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SIMON ZHORNITSKY | : | |
| | : | CIVIL ACTION NO. 3:24-CV-00018-KAD |
| PLAINTIFF | : | |
| | : | |
| v. | : | |
| | : | |
| YALE SCHOOL OF MEDICINE AND | : | |
| CONNECTICUT MENTAL HEALTH | : | |
| CENTER | : | |
| | : | |
| DEFENDANTS | : | |
| | : | JUNE 4, 2024 |

## REPLY TO MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS

The defendant, Yale University (hereinafter "the defendant"), hereby replies to the plaintiff's opposition to the defendant's motion to dismiss all counts asserted against it in the plaintiff's January 5, 2024 complaint.

### I. Counts One, Two, and Six

Opposing the defendant's motion to dismiss Counts One, Two, and Six, the plaintiff relies on the Second Circuit's decision in Menaker v. Hofstra University, 935 F.3d 20 (2d Cir 2019). (ECF No. 20, p. 3-4.) In that case, the Second Circuit held: "Where a university (a) takes an adverse employment action against an employee, (b) in response to allegations of sexual misconduct, (c) following a clearly irregular investigative or adjudicative process, (d) amid criticism for reacting inadequately to allegations of sexual misconduct by members of one sex, these circumstances support a prima facie case of sex discrimination." Id. at 39. Since the plaintiff does not meet the third and fourth factors delineated in Menaker, he fails to state a *prima facie* case of gender discrimination under the holding of that case.

In Menaker, the events underlying the complaint occurred against a general background of debate and criticism concerning the handling of allegations of sexual harassment and misconduct by American

universities, including the defendant, Hofstra University ("Hofstra").  By May, 2015, the national press had identified Hofstra as one of the several universities under investigation by the Department of Education for possible mishandling of sexual misconduct claims.  Hofstra also faced internal criticism for its assertedly inadequate response to male sexual misconduct on campus.  Menaker v. Hofstra, 935 F.3d 20, 26-27 (2d Cir 2019).

On January 15, 2016, the plaintiff joined Hofstra as its Director of Tennis and Head Coach of the men's and women's varsity tennis teams.  In late April, 2016, a member of the women's varsity tennis team approached the plaintiff to discuss an increase in her scholarship for her sophomore year.  The plaintiff denied an increase at that time, but stated that he could increase the scholarship for her junior and senior years.  After being notified of the plaintiff's denial of the request for a scholarship increase, the student's father accused the plaintiff of reneging on a commitment made by his predecessor and threated that "trouble would 'come back to him.'"  Shortly thereafter, Hofstra received a letter from the student's lawyer alleging that the plaintiff subjected the student to unwanted and unwarranted sexual harassment and quid pro quo threats that were severe, pervasive, hostile, and disgusting.  When the student did not respond to the plaintiff's advances, he allegedly threatened her scholarship and position on the team.  Id. at 27-28.

In July, the plaintiff was summoned to a meeting, but not informed of the reason in advance.  After reviewing the letter from the student's lawyer, the plaintiff denied all of the allegations contained therein.  The plaintiff was informed that Hofstra would be conducting an investigation and that a report would be shared with him.  Hofstra's Harassment Policy included formal procedures for investigating and resoling harassment claims, including that Hofstra's investigator interview potential witnesses, accused parties have the right to submit a written response, and the investigator produce a written determination of reasonable cause.  The plaintiff provided copies of his communications with the student

and suggested names of student-athletes who could provide information that might be useful for the investigation.  Hofstra made no further requests from the plaintiff and did not interview the students he identified.  During this time, Hofstra's Vice President and Director of Athletics told the plaintiff that he assumed the complaint to be a ploy by the student's parents and that such complaints were not uncommon.  Two months later, in September, the plaintiff was summoned to a meeting, again without being given advance notice of its purpose.  During that meeting, he was fired for unprofessional conduct.  The plaintiff thereafter filed suit in district court, alleging violations of Title VII, the New York State Human Rights Law, and the New York City Human Rights Law.  The only issue on appeal from the district court judgment granting the defendant's motion to dismiss, was whether the complaint alleged circumstances that provided at least minimal support for an inference of discriminatory intent.  Id. at 28-31.

The Second Circuit first discussed the proper scope of its decision in Doe v. Columbia, 831 F.3d 46 (2d Cir. 2016).  In Doe v. Columbia, a male student brought a claim under Title IX after he was suspended for sexual assault.  His complaint alleged an atmosphere of public pressure demanding that the university react more swiftly and severely to female complaint of sexual misconduct against males.  The complaint also included examples of substantial procedural irregularities in the investigation and adjudication of the accusations against the plaintiff, including the university's (1) failure to seek out potential witnesses the plaintiff had identified; (2) failure to act in accordance with its procedures designed to protect accused students; and (3) arrival at conclusions that were incorrect and contrary to the weight of the evidence.  Menaker v. Hofstra, 935 F.3d 20, 31 (2d Cir 2019).  The Second Circuit in Menaker disagreed with the district court's limitations on the application of Doe v. Columbia, including that the holding was limited to (1) sexual assault accusations; (2) Title IX claims; and (3) cases where the public pressure on a university was particularly acute.  The Second Circuit explained that Doe v.

Columbia stood "for the general principle that where a university (1) takes an adverse action against a student or employee, (2) in response to allegations of sexual misconduct, (3) following a clearly irregular investigative or adjudicative process, (4) amid criticism for reacting inadequately to allegations of sexual misconduct by members of one sex, these circumstances provide the requisite support for a *prima facie* case of sex discrimination." Menaker v. Hofstra, 935 F.3d 20, 31 (2d Cir 2019). Id. at 32-34.

Since the plaintiff in Menaker had clearly alleged that he suffered an adverse employment action that came in response to accusations of sexual harassment and plausibly alleged facts suggesting at least some pressure on the Hofstra to react more forcefully to allegations of sexual misconduct (e.g., the "Dear Colleague" Letter, a Department of Education investigation, and student criticism), the only remaining question on appeal was whether his termination followed a sufficiently irregular process to raise inference of bias. The Second Circuit noted that Doe v. Columbia offered some guidance on the issue of what sort of irregularities met the standard of "clearly irregular investigative or adjudicate process: "For instance, '[w]hen the evidence substantially favors one party's version of a disputed matter, but an evaluator forms a conclusion in favor of the other side (without an apparent reason based in the evidence), it is plausible to infer (although by no means necessarily correct) that the evaluator has been influenced by bias.' Similarly, where decision-makers choose 'to accept an unsupported accusatory version over [that of the accused], and declined even to explore the testimony of [the accused's] witnesses,' this too 'gives plausible support to the proposition that they were motivated by bias.'" Menaker v. Hofstra, 935 F.3d 20, 34 (2d Cir 2019), quoting Doe v. Columbia, 831 F.3d 46, 57 (2d Cir. 2016). The Second Circuit found that the following allegations in the Menaker plaintiff's complaint reflected a clearly irregular investigative and adjudicative process: (1) Hofstra failed to interview relevant witnesses suggested by the plaintiff; (2) the plaintiff was terminated despite the fact that the Vice President knew that at least one of the accusation against him was false and believed the complaint to be a ploy; (3) the plaintiff did not

receive a report of the investigation as promised; and (4) the plaintiff did not receive the procedural protections provided in Hofstra's Harassment Policy, which requires that Hofstra interview potential witnesses, provide respondents the opportunity to submit a written response, and produce a written determination of reasonable cause.  Menaker v. Hofstra, 935 F.3d 20, 34-35 (2d Cir 2019).  For these reasons, the Second Circuit vacated the judgment of the district court and remanded the case for further proceedings.  Id. at 40.

Opposing the present defendant's motion to dismiss, the plaintiff argues that he has adequately alleged both clear procedural anomalies in the proceedings and pressure on the defendant to act to sustain a discrimination claim under the holding in Menaker.  (ECF No. 20, p. 7.)  The type of procedural irregularities mentioned in Menaker all involved a failure to follow certain procedures provided for in Hofstra's Harassment Policy.  The present plaintiff has not identified any provision of the UWC Procedures that the defendant failed to follow.[1]  There is no suggestion that the defendant failed to interview suggested witnesses, provide him an opportunity to respond to the complaint, or produce a written determination.  Instead, the plaintiff points to specific pieces of information which he believes demonstrates that the UWC Panel came to an erroneous conclusion.  See, ECF No. 20, p. 5-8.  Tellingly, the plaintiff never denies in his complaint that he engaged in the conduct described by Joanna Perez.  Although he would not characterize his messages as being of a sexual or sexually harassing nature, the plaintiff admits that he sent messages to Ms. Joanna Perez's Instagram account expressing his continued interest in her for several weeks.  Although Ms. Perez did not respond to any of the messages, the plaintiff believed that she was responding through public posts.  The plaintiff further acknowledges that he was

---

[1] The plaintiff alleges that Yale University did not permit him to file a complaint against Joanna Perez, and claims that this was an irregularity.  As explained in the defendants' initial brief, Ms. Perez was not an employee of Yale University (which the plaintiff acknowledges in Paragraph 8 of his complaint) and therefore not subject to Yale's Title IX policies or disciplinary procedures.  Thus, it would be impermissible for the defendant to allow the plaintiff file a complaint against Ms. Perez.  See, ECF No. 10-1, p. 4, 9.  This does not qualify as a procedural irregularity.

told by CMHC police and Yale's Title IX Coordinator to have no further contact with Ms. Perez as a result of his messages.  (ECF No. 1, ¶¶ 10-13.)  Rather than point to any gender discrimination, the plaintiff's complaint simply alleges that the UWC Panel incorrectly determined that he stalked and sexually harassed Ms. Perez in violation of Yale University's sexual misconduct policy.  The plaintiff's subjective belief that the UWC Panel should have reached a different conclusion after evaluating the facts is insufficient to state claims for gender discrimination.

Menaker also requires a plaintiff to allege that the defendant took an adverse action "amid criticism for reacting inadequately to allegations of sexual misconduct by members of one sex." Menaker v. Hofstra, 935 F.3d 20 (2d Cir 2019).  There is no allegation in the present complaint suggesting that the defendant was criticized for its investigation and determination of complaints for sexual misconduct.  As determined in Ali-Hasan v. St. Peter's Health Partners Medical Associates, P.C., 2023 WL 7320860 (N.D.N.Y. November 7, 2023), *cert. denied*, 2024 WL 1607774 (April 15, 2024), the lack of such an allegation is fatal to a discrimination claim asserted under the Menaker holding.

In Ali-Hasan, the plaintiff was terminated from his position as a physician after the defendants received an anonymous complaint allegedly accusing the plaintiff of gender discrimination.  The plaintiff alleged that the defendants failed to adequately investigate the complaint due to their bias against him as a male accused of gender discrimination.  The district court granted the defendant's motion for summary judgment, concluding that the plaintiff had failed to point to evidence sufficient to show a *prima facie* case of sex discrimination.  Id. at *1.

On appeal, the Second Circuit considered whether the plaintiff alleged sufficient facts to meet the fourth prong of his *prima facie* case, i.e., whether the circumstances of the adverse employment action gave rise to an inference of discrimination.  Id.  The Second Circuit found the plaintiff's reliance on Menaker unavailing, noting that the Second Circuit in Menaker was careful to describe the circumstances

6

in which the case arose: "'[t]he events at issue occurred against a general background of debate and criticism concerning the handling of allegations of sexual harassment and misconduct by American universities, including Hofstra.'" Id. at *2, quoting Menaker v. Hofstra, 935 F.3d 20, 26 (2d Cir 2019). The Second Circuit in Ali-Hasan concluded that the circumstances of the plaintiff's termination were not analogous to those in Menaker: "Assuming *arguendo* that the theory we articulated in *Menaker* and subsequent cases such as *Vengalattore v. Cornell University*, 36 F.4th 87 (2d Cir. 2022), is applicable outside the educational context, Ali-Hasan has provided no evidence suggesting that [defendants] were under 'criticism for reacting inadequately to allegations of sexual misconduct by members of one sex.'" Id. at *2.

The Second Circuit went on to state that the third Menaker factor regarding a "clearly irregular investigative or adjudicative process" was insufficient on its own to create an inference of discrimination: "Even assuming *arguendo* that Appellees' investigation was 'clearly irregular,' [the plaintiff] has no basis for asserting that this factor can, on its own, create such an inference." Id. at *3. Under Second Circuit precedent, the plaintiff in Ali-Hasan was "required to present evidence that [the defendants] were under pressure concerning their treatment of sexual misconduct complaints or to provide other evidence from which a court could infer that his termination was motivated by sex bias." Id. Since the plaintiff failed to do either, the Second Circuit found that the district court properly granted summary judgment in favor of the defendants on the Title VII claim.

Similar to the plaintiff in Ali-Hasan, the present plaintiff has failed to allege in his complaint that the adverse actions occurred "amid criticism for reacting inadequately to allegations of sexual misconduct by members of one sex." There is no suggestion of outside criticism from the public or from members of the Yale University community regarding the defendant's investigation and adjudication of sexual misconduct complaints. The plaintiff argues in opposition to the defendant's motion to dismiss that the

defendant was pressured by Ms. Perez to act on a female's complaint of sexual misconduct against a male.  (ECF No. 20, p. 7.)  Even if it were alleged in the complaint that Ms. Perez pressured the defendant to act on her own complaint – and it is not – such an allegation would be insufficient to show that the adverse action occurred amid criticism for reacting inadequately to allegations of sexual misconduct, as required by <u>Menaker</u>.

Since the plaintiff has not adequately pled that the UWC proceeding was a "clearly irregular investigative or adjudicative process" or that the adverse actions occurred "amid criticism for reacting inadequately to allegations of sexual misconduct by members of one sex," the complaint fails to state claims under Title VII and Title IX pursuant to <u>Menaker</u>.  Therefore, Counts One, Two, and Six should be dismissed.

**II.      Count Four**

Opposing the defendant's motion to dismiss Count Four, the plaintiff claims that he has sufficiently alleged that the defendant did not take any action on Ms. Perez's complaint until after it learned of the plaintiff's CHRO complaint, and that this allegation is sufficient to defeat the defendant's motion to dismiss.  (ECF No. 20, p. 10-11.)  The defendant's arguments in support of dismissal of the plaintiff's Title VII retaliation claim are fully set forth in its initial brief.  <u>See</u>, ECF No. 10-1, p. 14-18. The defendant will not repeat those arguments in this reply.  Suffice it to say that the plaintiff's complaint alleges that Ms. Perez initiated the formal UWC complaint process on November 22, 2023, nearly two months before the defendant was notified of the plaintiff's CHRO complaint.  (ECF 1, ¶ 25, 27.)  This allegation belies any temporal proximity to establish the causal connection required to sufficiently state a claim for retaliation.

**III.     Counts Fix and Seven**

The plaintiff has abandoned the breach of contract and intentional infliction of emotional distress

claims in Counts Five and Seven.  (ECF No. 20,p. 2, fn 2.)

## CONCLUSION

For the foregoing reasons and those stated in the defendant's memorandum of law in support of motion to dismiss, the defendant's Motion to dismiss should be granted.

                                        THE DEFENDANT, YALE UNIVERSITY


                                        By:  *Patrick M. Noonan*
                                             PATRICK M. NOONAN – CT00189
                                             Carmody Torrance Sandak & Hennessey LLP
                                             Concept Park
                                             741 Boston Post Road, Suite 306
                                             Guilford, CT  06437
                                             Telephone:  (203) 458-9168
                                             Fax:  (203) 458-4424
                                             Email:  pnoonan@ddnctlaw.com


## CERTIFICATION

I hereby certify that, on the above-written date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

                              By:  *Patrick M. Noonan*
                                   Patrick M. Noonan